KENNETH MACKALL *v.* STATE OF MARYLAND

[No. 139, September Term, 1977.]

*Decided June 1, 1978.*

*Refiled July 13, 1978.*

*Motion for reconsideration filed June 16, 1978; granted July 13, 1978, opinion recalled and opinion refiled.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Geraldine Kenney Sweeney, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court. MURPHY, C. J., concurs in the result.

On 23 September 1976 the Grand Jurors for Calvert County returned a true bill against Kenneth Mackall presenting that

on 17 April 1976 he did assault Charles Lester Rawlings with intent to murder (1st count); that he did assault Rawlings with intent to maim (2nd count); that he did assault and beat Rawlings (3rd count); and that he "did unlawfully wear and carry concealed upon and about his person a certain dangerous and deadly weapon, to wit: a knife, and did wear and carry said weapon openly with intent and purpose of injuring another person in an unlawful manner" (4th count). At a court trial in the Circuit Court for Calvert County, a motion for judgment of acquittal was granted as to the 1st count at the close of all the evidence. Mackall was found guilty under the 2nd, 3rd and 4th counts. He was sentenced to 10 years on the 2nd count, to 20 years on the 3rd count, concurrent with the sentence on the 2nd count, and to 3 years on the 4th count, consecutive to the other sentences. On appeal, the Court of Special Appeals affirmed the judgments on the 2nd and 4th counts and "reversed" the judgment on the 3rd count, finding that it merged with the judgment on the 2nd count. *Mackall v. State,* No. 278, September Term, 1977, decided 28 October 1977, unreported. We granted Mackall's petition for a writ of certiorari. It went only to the judgment on the 4th count, presenting the sole question:

> "Did the Court of Special Appeals err in holding that petitioner had the burden of proving that the knife he carried was not a penknife, where, by virtue of the definitional clause of the statute, it is not a crime to carry a penknife?"

## I

The circumstances leading to the indictment and convictions are presented to us by an agreed statement of facts pursuant to Maryland Rule 828 g. We quote from Mackall's brief:

> "On April 17, 1976, a series of 'barroom brawls' took place on the parking lot of Duke's Tavern in Calvert County. [Mackall] and at least three other persons were involved and a small crowd of witnesses watched. Between skirmishes, one of the

witnesses removed a knife from her purse and gave it to [Mackall], who shortly thereafter used it to cut one of the participants in the earlier scuffle. Although [Rawlings], [Mackall] and several eye witnesses testified, the State failed to adduce any description of the knife involved."

The State, with Mackall's consent, supplemented the statement in its brief with portions of the testimony of the investigating officer, Trooper Michael Snukis of the Maryland State Police. Arriving at the crime scene, Snukis saw three injured persons.

"[Rawlings] was lying on a girney. He had a sharp instrument wound, a clean-cut wound, approximately four inches across the back of his neck fairly deep. Also he had a sharp instrument wound on both arms approximately this area, and also on his left lower back area around where the kidneys are. The other person was one Lucille Wallace. She sustained — she was lying there with a cut on her left arm which required stitches and was also a sharp instrument wound. Another person was found. Her name was Betty Lou Johnson. She sustained a laceration on the nose where the tip of the nose was removed." [1]

## II

The issue for decision concerns Maryland Code (1957, 1976 Repl. Vol., 1977 Cum. Supp.) Art. 27, § 36.[2] Subsection (a) of

---

1. There was evidence that Johnson was injured when Rawlings pushed her, and she fell face down on broken glass.

2. Before the Court of Special Appeals Mackall presented the question: "Was the evidence sufficient to support the conviction for carrying a dangerous and deadly weapon?"

In his brief before us he asks:

"In a prosecution for carrying a dangerous weapon as proscribed by Maryland Code, Art. 27, § 36, does the State bear the burden of proving that the weapon is one prohibited by the statute by negating the exception for penknives because that exception is 'so incorporated with the definition or description of the offense as to constitute a part thereof?' "

that statute provides that every person who shall wear or carry certain designated weapons, "or any other dangerous or deadly weapon of any kind, whatsoever (penknives without switchblade and handguns, excepted)," [3] either "concealed upon or about his person" or "openly with the intent or purpose of injuring any person in any unlawful manner," shall be guilty of a misdemeanor. The punishment upon conviction of either of these acts is a fine of not more than $1,000 or imprisonment for not more than three years. However, "if it shall appear from the evidence that such weapon was carried, concealed as aforesaid or openly, with the deliberate purpose of injuring the person or destroying the life of another, the court shall impose the highest sentence of imprisonment hereinbefore prescribed." [4] § 36 (a).

Subsection (c) prescribes:

"Nothing in this section shall be construed to prevent the carrying of any of the weapons

---

The State phrases the question thus:

"Does the exception contained in Article 27, § 36 of the Annotated Code of Maryland, constitute an essential ingredient of the offense requiring the state to negate same...."

3. The weapons specifically designated by the present law are "any dirk knife, bowie knife, switchblade knife, sandclub, metal knuckles, razor, nunchaku ...." When the statute was originally enacted the proscribed weapons were "any pistol, dirk-knife, bowie-knife, slung-shot, billy, sand-club, metal knuckles, razor or any other dangerous or deadly weapon of any kind whatsoever, (penknives excepted)...." Acts 1886, ch. 375. They remained the same through amendment to the law by Acts 1894, ch. 547; Acts 1904, ch. 114; and Acts 1914, ch. 146. By Acts 1957, ch. 168, "switch-blade knife" was added, "billy" was deleted, "slung shot" was changed to "sling shot," and "without switchblade" was added to the "penknives" exception. Acts 1959, ch. 802; Acts 1961, ch. 616 and ch. 641; Acts 1963, ch. 496 and ch. 558; Acts 1966, ch. 502; Acts 1968, ch. 202; Acts 1969, ch. 452; and Acts 1972, ch. 181, § 28, made no change in this respect. Acts 1972, ch. 13, § 1, deleted "pistol" and added "handguns" to the exception. Acts 1973, ch. 651, § 13 made no change. Art. 27, § 36 (a) reached its present form as to the designated weapons by Acts 1974, ch. 718 with the addition of "nunchaku." A definition of "nunchaku" was given in subsection (b).

4. The sentence originally authorized by Acts 1886, ch. 375 was a fine of not more than $500 or imprisonment for not more than six months. It was increased to not more than $1,000 or imprisonment for not more than two years by Acts 1894, ch. 547, and a provision requiring the imposition of the highest sentence of imprisonment if the weapon was carried "with the deliberate purpose of inflicting grievous and unlawful injury to the life or person of another" was added. The maximum term of imprisonment was increased to three years by Acts 1966, ch. 502.

mentioned in [subsection (a)] of this section by an officer of this State, or of any county or city therein, who is entitled or required to carry such weapon as part of his official equipment, or by any conservator of the peace, who is entitled or required to carry such weapon as part of his official equipment, or by any officer or conservator of the peace of some other state temporarily sojourning in this State, or by any special agent of a railway or by any person to whom a permit to carry a concealed weapon has been issued under § 36E of this article, or by any person who shall carry such weapon as a reasonable precaution against apprehended danger, but the tribunal before which any case arising under the provisions of this section may be tried, shall have the right to judge of the reasonableness of the carrying of any such weapon and the proper occasion therefor, under the evidence in the case." [5]

Subsection (a) also provides that in certain counties "it shall also be unlawful and a misdemeanor, punishable as above set forth, for any person under eighteen years of age to carry any dangerous or deadly weapon, other than a handgun, between one hour after sunset and one hour before sunrise,

---

5. Code (1957, 1976 Repl. Vol., 1977 Cum. Supp.) Art. 27, § 36 (c). As originally written, the prohibition against carrying the proscribed weapons did not apply to "a conservator of the peace entitled or required to carry such weapon as part of his official equipment. . . ." Acts 1886, ch. 375. The provision reached its present form through a number of amendments and re-enactments. The "reasonable precaution against apprehended danger" provision first appeared in Acts 1894, ch. 547. The preamble to the Act read:

"Whereas, It is represented to this General Assembly that the existing law in reference to the offense of carrying concealed weapons does not make proper discrimination in favor of those who travel in dangerous localities, or from other imminent necessity, or prudent precaution in the presence of threatened injury to their lives or persons, may reasonably arm themselves for self-protection; and the law has been made an instrument of injustice to those not deserving of punishment; . . . ."

The exclusion of certain persons authorized to carry such weapons was included as separate subsection 30A in Acts 1914, ch. 146. In the 1951 Code it appeared as subsection (b) and was so continued in the 1957 Code. With the addition of "nunchaku" by Acts 1974, ch. 718, and the definition of that term as subsection (b), the provision became subsection (c). See Acts 1975, ch. 219; Acts 1976, ch. 194.

whether concealed or not, except while on a bona fide hunting trip, or except while engaged in or on the way to or returning from a bona fide trap shoot, sport shooting event, or any organized civic or military activity." Only handguns are excepted: "penknives without switchblade" are not included in the exception.[6]

The legislative scheme is manifest from the language and structure of the statute. Under subsection (a):

1) Generally, it is a misdemeanor for any person to carry any dangerous or deadly weapon:
   a) concealed, or
   b) openly with the intent or purpose of injuring any person in any unlawful manner.

2) The following articles are dangerous and deadly weapons *per se:*
   a) dirk knives;
   b) bowie knives;
   c) switchblade knives;
   d) sandclubs;
   e) metal knuckles;
   f) razors;
   g) nunchakus.

3) The following articles, even though dangerous and deadly weapons, are not within the ambit of the statute:
   a) penknives without switchblade;
   b) handguns.

4) In certain counties, it is a misdemeanor for any person under 18 years of age to carry any dangerous or deadly weapon at night, whether concealed or openly, unless such person is

---

6. The genesis of this provision was in Acts 1959, ch. 802. It applied to any minor in Cecil County and did not contain an exception as to handguns. Other counties were added by subsequent amendments. The "other than a handgun" exception was added by Acts 1972, ch. 13, § 1. That clause, however, was not in the amendment by Acts 1972, ch. 181, § 28. It reappeared in Acts 1973, ch. 651, § 13, which changed any "minor" to any "person under eighteen years of age."

engaged in, or on the way to or from, certain activities:

    a) handguns, being expressly excepted, are not within the ambit of this provision.

    b) penknives without switchblade, not being excepted, are within the ambit of this provision.

5) The punishment for carrying a dangerous or deadly weapon concealed, or for carrying it openly with the intent or purpose of injuring any person in any unlawful manner shall be a fine of not more than $1,000 or imprisonment for not more than 3 years; but

    a) if it appears from the evidence that such weapon was carried, either concealed or openly, with deliberate purpose of injuring the person or destroying the life of another, 3 years imprisonment is mandated.

Under subsection (c):

(1) The statute does not apply to certain persons

    a) entitled or required to carry a proscribed weapon as a part of their official equipment; or

    b) who have been issued a permit to carry such a weapon; or

    c) who shall carry such weapon as a reasonable precaution against apprehended danger.

        (i) the tribunal trying the case has the right to judge the reasonableness of the carrying of such weapon and the proper occasion therefor.[7]

---

7. Subsection (d) authorizes prosecutions for violations of the statute to be upon presentment and indictment or upon information in any court having criminal jurisdiction in this State.

## III

Mackall argues:

"In a prosecution for carrying a dangerous weapon as proscribed by Maryland Code, Art. 27, § 36 (a), the State bears the burden of proving that the weapon is one prohibited by the statute by negating the exception for penknives without switchblades because that exception is 'so incorporated with the definition or description of the offense as to constitute a part thereof.' "

He asserts: "[I]f the State had the burden to prove that the weapon was not a penknife without switchblade, the evidence is insufficient; if [Mackall] had the burden to prove that the weapon was a penknife without switchblade, the evidence is sufficient." We agree that this is the heart of the issue for decision.

Mackall does not contest that he assaulted Rawlings with intent to maim. And he concedes that the weapon with which the assault was committed was a knife which he carried openly with the intent and purpose of injuring Rawlings. Furthermore, it is clear from the nature of the wounds inflicted that the knife used, although not shown to be one of those listed in the statute so as to be a dangerous or deadly weapon *per se,* was, in the circumstances, a dangerous or deadly weapon. *See Bennett and Flynn v. State,* 237 Md. 212, 214-216, 205 A. 2d 393 (1964). Even so, Mackall claims, this is not enough to prove a violation of § 36 (a) because it was not established that the knife was other than a knife without a switchblade.[8] This was the crux of Mackall's argument on the point before the Court of Special Appeals. We agree that had the evidence shown that the knife here was a penknife

8. As is apparent from the agreed statement of facts, although it is agreed that a knife was used to inflict the injuries on Rawlings, the State does not dispute that the evidence adduced did not show what kind of knife it was. The various witnesses who testified that a knife was used, referred to the weapon only as a "knife." There was no description of it whatsoever, and no attempt was made by Mackall or the State to elicit a description. Mackall denied using or even seeing a knife and other witnesses testified that they did not see a knife. The knife was not offered in evidence, apparently because it was not recovered by the police.

without switchblade, the carrying of it in Calvert County, concealed, or openly with intent to injure, no matter how it was used, would not constitute a violation of § 36 anymore than the carrying of a handgun, beyond question a dangerous or deadly weapon, would have been a violation.[9] The question boils down to whether the State had to establish, beyond a reasonable doubt, that the knife Mackall was found to have carried with the deliberate purpose of injuring Rawlings was a dirk knife or a bowie knife or a switchblade knife or any other dangerous or deadly weapon other than a penknife without switchblade. The Court of Special Appeals expressed Mackall's contention thus:

> "[S]ince penknives without switchblades are excepted from subsection (a), and the carrying of them is therefore noncriminal, it was incumbent upon the State to prove, beyond a reasonable doubt, that the knife used by [Mackall] was one that is included within the statute, *i.e.,* that it was something other than a penknife without a switchblade."

It believed that a similar contention was made and rejected by this Court in *Spurrier v. State,* 229 Md. 110, 182 A. 2d 358 (1962) (per curiam). *Spurrier* concerned the provisions of subsection (b), now subsection (c) and hereinafter referred to as subsection (c), providing that § 36 shall not be construed to apply to certain persons. *Spurrier* answered the contention that the State had the burden of proving that the defendant was not one of the exempted persons by applying the rule that "when the facts are peculiarly within the knowledge of the defendant ... the burden is on him to prove that he comes within one or more of the exceptions." *Id.* at 112. The Court of Special Appeals found "no distinction between the exception for penknives stated in subsection (a) and the exceptions for certain peace officers contained in subsection

---

9. It is immaterial in this context that the wearing, carrying or transporting of a handgun is unlawful under another statute, Maryland Code (1975, 1976 Repl. Vol.) Art. 27, § 36B (b). It was upon the passage of the Handguns Law that "pistol" was deleted from the weapons expressly listed in § 36 (a) and "handguns" added to the exception therefrom. But we can find no legislative intent to treat the "knife without switchblade" exception any differently from the "handgun" exception.

(c)." It found the rule stated in *Spurrier* as to the facts within the knowledge of the defendant to be "equally apposite here." It said:

> "Section 36 (a) proscribes the carrying of not only a variety of knives, but also 'any other dangerous or deadly weapon of any kind, whatsoever', which, generically, a penknife may well be. The exception for penknives, therefore, is not an essential element of the offense, but rather an exception to what otherwise would be criminal, in the same manner as the exemptions in subsection (c)."

We do not agree. We do not believe that the holdings of *Spurrier* regarding the exceptions in subsection (c) are apposite to weapon exceptions in subsection (a). In *Spurrier,* before disposing of the contention that the State had the burden of proving that the defendant was not within the exceptions prescribed by subsection (c), we found that it was clear that none of the exceptions prescribed by subsection (c) was "a constituent element of the offense charged in the indictment. . . ." *Id.* at 111.[10] We made this determination primarily under the authority of *Howes v. State,* 141 Md. 532, 119 A. 297 (1922). The teachings contained in the comprehensive discussion in *Howes* may be fairly summarized thus: when a penal act contains an exception so incorporated with the substance of the clause defining the offense as to constitute a material part of the description of the acts, omission or other ingredients which constitute the offense, the burden is on the State to prove beyond a reasonable doubt, that the offense charged is not within the exception. In other words, when an exception is descriptive of the offense or so incorporated in the clause creating it as to make the exception a part of the offense, the State must negate the exception to prove its case. But, when an exception is not descriptive of the offense or so incorporated in the clause creating it as to make the exception a part of the

---

10. This finding was with reference to the claim that the indictment was defective in that it did not negate the exceptions set forth in subsection (c). The sufficiency of the indictment in the case *sub judice* is not an issue. In any event, *see* former Maryland Rule 712 a, now Maryland Rule 711 d, effective 1 July 1977.

offense, the exception must be interposed by the accused as an affirmative defense. *Howes* at 535-548. Of course, the burden of proving the corpus delicti and criminal agency is always on the State, and once the exception is interposed by the defendant, the burden remains on the State to show that it is not applicable.

The exceptions prescribed in subsection (c), a subsection subsequent to the enacting clause of the offense proscribed, are not, as *Spurrier* found, so incorporated with the definition or description of the offense as to constitute a part thereof. Thus, it was not necessary for the State to prove, as part of its case in chief, that Mackall was without the class of persons excepted. On the other hand, it is manifest that the weapons exception in subsection (a), set out in the enacting clause defining the offense, is an essential ingredient of the offense. The offense defined is committed only if certain weapons are carried. What those weapons are can be determined only in terms of those which are proscribed and those which are excepted. The weapons excepted are as necessary to the description of the offense as are the weapons proscribed. Inasmuch as it is incumbent upon the State to prove, beyond a reasonable doubt, that the weapon carried was one within the ambit of the statute, it must show that the weapon was one of those which the statute expressly specifies shall not be carried, or that it was any other dangerous or deadly weapon other than a penknife without switchblade or a handgun.

The evidence here did not establish that the knife carried by Mackall was a dirk knife, a bowie knife, or a switchblade knife, the three types of knives expressly proscribed by the statute. Therefore, although the evidence was sufficient to show that the knife was a dangerous and deadly weapon by the use to which it was put, *Bennett and Flynn,* 237 Md. at 214-216, the State had the further burden of showing that it was not a penknife without switchblade in order to prove the corpus delicti of the crime charged. Not having done so, the evidence adduced was not legally sufficient to sustain the conviction, and the judgment must be reversed.[11]

---

11. In light of what we have said, we observe that as to the other offense created by Maryland Code (1957, 1976 Repl. Vol.) Art. 27, § 36 (a), which

We find support for our view in other jurisdictions. *See,* for example, *State v. Jung,* 19 Ariz. App. 257, 506 P. 2d 648, 653 (1973); *McDonald v. State,* 83 Ark. 26, 30, 102 S. W. 703 (1907); *Denison v. State,* 87 Ga. App. 395, 397, 74 S.E.2d 126 (1953); *State v. Segovia,* 93 Idaho 208, 210, 457 P. 2d 905 (1969); *People v. Chmilenko,* 44 Ill. App.3d 1060, 1062, 358 N.E.2d 1247 (1976); *State v. Lynch,* 197 N.W.2d 186, 190 (Iowa 1972), *cert. denied,* 409 U. S. 1116 (1973); *People v. Rios,* 386 Mich. 172, 176-179, 191 N.W.2d 297 (1971); *State v. Pascagoula Veneer Company,* 227 So. 2d 286, 287-288 (Miss. 1969); *Kansas City v. Wilhoit,* 237 S.W.2d 919, 922 (Mo. App. 1951); *State v. Tonnisen,* 92 N. J. Super. 452, 456, 224 A. 2d 21 (1966).

The cases cited by the State as authority that the weapons exception in § 36 (a) is not an essential ingredient of the offense, and, thus, need not be negated by the prosecution, are not apposite.[12] They concern a license exception to a prohibition against carrying firearms. It is patent that the procurement of a license is not an element of the offense of carrying a firearm, and the holdings that the defendant must show that he had a license as an affirmative defense are not inconsistent with our view. Nor is *People v. Smith,* 45 Ill. App.3d 66, 359 N.E.2d 228 (1977), referred to by the State, of help to it. That case held that accessibility is not an element

---

concerns persons under 18 years of age, the burden would appear to be on the State to prove beyond a reasonable doubt, as elements of the crime, that the accused was:

(1) under 18 years of age;
(2) carrying a dangerous or deadly weapon, other than a handgun,

    (a) between one hour after sunset and one hour before sunrise,
    (b) in one of the designated counties.

The exceptions prescribed are not elements of the offense. Thus, it is incumbent upon the accused to interpose as a defense that he was carrying such weapon:

(1) while on a bona fide hunting trip; or
(2) while engaged in or on the way to or returning from a bona fide trap shoot, sport shooting event, or any organized civic or military activity.

12. United States v. Garcia, 555 F. 2d 708 (9th Cir. 1977); People v. Williams, 184 Cal.App.2d 673, 7 Cal. Rptr. 604 (1960); Commonwealth v. Jones, 361 N.E.2d 1308 (Mass. 1977); People v. Henderson, 391 Mich. 612, 218 N.W.2d 2 (1974); State v. Paige, 256 N.W.2d 298 (Minn. 1977).

of the offense of unlawful use of weapons; rather, lack of immediate accessibility is an affirmative defense to be shown by the defendant. It found, however, consistent with our view, that the burden of proof as to an element of the offense or as to the inapplicability of an affirmative defense is upon the State.

We summarily reject the State's notion that the nature of the wounds "would at least raise the inference that a penknife was not used," so that the evidence was sufficient to negate the exception. Although the wounds as described may be "unquestionably consistent with the use of a knife other than a penknife," they are also consistent with the use of a penknife, even if a penknife be considered as "a small pocketknife, originally used to make or sharpen quill pens." The American Heritage Dictionary of the English Language (1969).[13] The inference the State proposes would not prove, beyond a reasonable doubt, that the weapon used was not a penknife without switchblade.

We find that the Court of Special Appeals erred in holding that Mackall had the burden of proving that the knife he carried was within the weapons exception prescribed. We hold that the evidence was not legally sufficient to sustain the conviction on the charge of carrying a dangerous and deadly weapon. We reverse the judgment of the Court of Special Appeals which affirmed the judgment of the trial court on the 4th count of the indictment. The judgments of the Court of Special Appeals with respect to the judgments of the trial court on the 2nd and 3rd counts, are not contested before us, and we affirm them.

In *Burks· v. United States*, 437 U. S. 1, 18 decided 14 June 1978, [46 U.S.L.W. 4632 (No. 76-6528)] the Supreme Court held that "the Double Jeopardy Clause [of the Fifth Amendment to the Constitution of the United States] precludes a second trial once the [federal] reviewing court has found the evidence legally insufficient" and that "the only 'just' remedy available for that court is

---

13. "Penknife" is not defined in the statute. Even if the General Assembly had the dictionary definition in mind when it first enacted the statute in 1886, this concept of a "penknife" had obviously changed when the exception was amended to "penknife without switchblade." Penknives today are commonly considered to encompass any knife with the blade folding into the handle, some very large.

the direction of a judgment of acquittal." 437 U.S. at 18. In *Green v. Massey*, 437 U.S. 19, 98 S. Ct. 2151, decided the same day, the Court granted certiorari "to decide whether a State may retry a defendant after conviction has been reversed by an appellate court on the ground that the evidence introduced at the prior trial was insufficient, as a matter of law, to sustain the jury's verdict." 437 U. S. at 20. The Court, referring to its holding in *Burks* that "the Double Jeopardy Clause precludes a second trial once a reviewing court has determined that the evidence introduced at trial was insufficient to sustain the verdict," held: "Since the constitutional prohibition against double jeopardy is fully applicable to state criminal proceedings, *Benton v. Maryland*, [395 U. S. 784, 89 S. Ct. 2056 (1969)] we are bound to apply the standard announced in *Burks* to the case now under review." 437 U.S. at 24. As we have held that the evidence in the case *sub judice* was not legally sufficient to sustain the conviction of Mackall on the charge of carrying a dangerous and deadly weapon, it follows that he may not be retried on that charge.

The effect of the holding in *Greene* is that *Gray v. State,* 254 Md. 385, 255 A. 2d 5 (1969), *cert. denied,* 397 U. S. 944 (1970) is no longer the law of this State.

> *Judgments of the Court of Special Appeals affirmed as to the 2nd and 3rd counts of the indictment; judgment of the Court of Special Appeals reversed as to the 4th count of the indictment; case remanded to the Court of Special Appeals with direction to remand to the Circuit Court for Calvert County for entry of a judgment of acquittal on the 4th count of the indictment; costs to be paid by Calvert County.*

Chief Judge Murphy concurs in the result.