40 A.3d 428

**Tyrone L. SMITH**

v.

**STATE of Maryland.**

**No. 76, Sept. Term, 2011.**

Court of Appeals of Maryland.

March 21, 2012.

Brian M. Saccenti, Assistant Public Defender (Paul B. De-Wolfe, Public Defender, Baltimore, MD), on brief, for Petitioner.

Todd W. Hesel, Honors Attorney (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, GREENE, ADKINS, BARBERA, ALAN M. WILNER, (Retired, Specially Assigned), and DALE R. CATHELL, (Retired, Specially Assigned), JJ.

ADKINS, J.

In this case, we must pull over and decide a narrow legal issue that emerged from a routine traffic stop. Petitioner Tyrone L. Smith was convicted of driving without a license in 2009. He appealed, claiming that the State's evidence was insufficient to convict him under Section 16–101(a) of the Transportation Article. That section reads:

*In general.*—An individual may not drive or attempt to drive a motor vehicle on any highway in this State unless:

(1) The individual holds a driver's license issued under this title;

(2) The individual is expressly exempt from the licensing requirements of this title; or

(3) The individual otherwise is specifically authorized by this title to drive vehicles of the class that the individual is driving or attempting to drive.

Md.Code (1977, 2008 Repl.Vol.), § 16–101(a) of the Transportation Article.[1]

The Court of Special Appeals affirmed his conviction, finding the evidence sufficient. The statute that defines driving without a license contains three parts, and Petitioner argues that the State must prove all three as part of its case. The State counters that the latter two parts are merely affirmative defenses, either of which a defendant must raise himself to avoid conviction.

We granted *certiorari* to clarify the statutory ambiguity and to answer the following question, which we have summarized and restated:

To convict a defendant of driving without a license in violation of Section 16–101(a) of the Transportation Article, must the State prove all three parts of the statute, as elements of the offense, beyond a reasonable doubt? [2]

We shall hold that the State need only prove the first part of the statute, and that the second and third parts are affirmative defenses that must be raised by a defendant.

---

1. Unless otherwise provided, all statutory references are to Maryland Code, Transportation Article.

2. The question was presented to us by Petitioner in this form:

To convict a defendant of violating Transportation Article § 16–101(a), which provides that an individual may not drive a motor vehicle unless he or she (1) holds a driver's license issued under Title 16 of the Article, (2) is expressly exempt from the licensing requirements of that title, or (3) is specifically authorized by the title to drive vehicles of the class he or she is driving, is the State required to prove, as elements of the offense, that the defendant was not expressly exempt from the licensing requirements and was not specifically authorized to drive the relevant class of vehicle?

## Facts and Legal Proceedings

The facts in this case are not disputed. On January 30, 2009, Petitioner was stopped by the Westminster City police. The police ran checks on Petitioner with the Maryland Motor Vehicle Administration ("MVA"), revealing that his registration had been suspended and had expired. Additional checks revealed that Petitioner's driver's license had been suspended in 2002 for failing to perform a driving improvement program and in 2003 for child support violations. His license was never reinstated, and his expired license was deleted from MVA records in 2005. Although Petitioner had an MVA-issued photo identification, he did not have a valid driver's license when stopped in 2009.

The Circuit Court for Carroll County found Petitioner guilty of driving without a license and entered a *nolle prosequi* to the remaining traffic counts against him. The Circuit Court sentenced Petitioner to 60 days at the Carroll County Detention Center. Petitioner then timely appealed to the Court of Special Appeals.

In that Court, Petitioner raised the question: "Was the evidence insufficient to convict [Petitioner] of violating Section 16–101(a) of the Transportation Article?" In an unreported opinion, the Court of Special Appeals found no error and affirmed the Circuit Court. It held that the evidence sufficiently supported Petitioner's conviction, because the State needed only to prove part (1) of Section 16–101(a):

> The exceptions to the license requirement set forth in subsection (2) and (3) are not constituent elements of the offense itself, but rather affirmative defenses to be raised by a defendant should they apply.

A petition for *certiorari* to this Court followed, which we granted on October 24, 2011. *See Smith v. State*, 422 Md. 353, 30 A.3d 193 (2011).

## Discussion

Petitioner asks us to interpret the language of Section 16–101(a) of the Transportation Article. He argues that the State

was required to prove, beyond a reasonable doubt, that (1) he did not have a Maryland driver's license, (2) he was not expressly exempt from the licensing requirements, and (3) he was not specifically authorized to drive vehicles of the class that he was driving. The State counters that the offense is defined by Section 16–101(a)(1), and the subsequent exceptions must be raised by a defendant as affirmative defenses.

Both parties cite *Mackall v. State,* in which this Court discussed the test for whether a statutory exception to a crime is an essential element of the offense that the State must negate or an affirmative defense that a defendant must raise:

> [W]hen a penal act contains an exception so incorporated with the substance of the clause defining the offense as to constitute a material part of the description of the acts, omission or other ingredients which constitute the offense, the burden is on the State to prove beyond a reasonable doubt, that the offense charged is not within the exception. In other words, when an exception is descriptive of the offense or so incorporated in the clause creating it as to make the exception a part of the offense, the State must negate the exception to prove its case. But, when an exception is not descriptive of the offense or so incorporated in the clause creating it as to make the exception a part of the offense, the exception must be interposed by the accused as an affirmative defense. (Citation omitted.)

*Mackall v. State,* 283 Md. 100, 110–11, 387 A.2d 762, 767–68 (1978). The statute in question in *Mackall* governed deadly or dangerous weapons:

> (a) Carrying concealed or openly with intent to injure; carrying by persons under eighteen at night in certain counties.—Every person who shall wear or carry any dirk knife, bowie knife ... or any other dangerous or deadly weapon of any kind, whatsoever (penknives without switchblade and handguns, excepted) concealed upon or about his person, and every person who shall wear or carry such weapon openly with the intent or purpose of injuring any

person in any unlawful manner, shall be guilty of a misdemeanor. . . .

\* \* \*

(c) Exceptions.—Nothing in this section shall be construed to prevent the carrying of any of the weapons mentioned in subsection (a) of this section by an officer of this State, or of any county or city therein, who is entitled or required to carry such weapon as part of his official equipment, or by any conservator of the peace, who is entitled or required to carry such weapon as part of his official equipment, or by any officer or conservator of the peace of some other state temporarily sojourning in this State, or by any special agent of a railway or by any person to whom a permit to carry a concealed weapon has been issued under § 36E of this article, or by any person who shall carry such weapon as a reasonable precaution against apprehended danger. . . .

*Id.* at 103–06, 387 A.2d at 763–65.

The *Mackall* Court concluded:

[I]t is manifest that the weapons exception in subsection (a), set out in the enacting clause defining the offense, is an essential ingredient of the offense. The offense defined is committed only if certain weapons are carried. What those weapons are can be determined only in terms of those which are proscribed and those which are excepted. The weapons excepted are as necessary to the description of the offense as are the weapons proscribed.

*Id.* at 111, 387 A.2d at 768. The exceptions in subsection (c), however, were in a subsection that followed the enacting clause and were thus not incorporated within the definition or description so as to constitute a part of it. *See id.* The State therefore had to negate the exceptions in subsection (a) only.

The parties disagree how the rule in *Mackall* should be applied to Petitioner's case. The State argues that Section 16–101(a)(1) defines the proscribed act, whereas (a)(2) and (a)(3) "are not necessary to the description of the offense because . . . they do not define any conditions under which an individual may drive a motor vehicle." The State asserts that,

because (a)(2) and (a)(3) "refer to conditions that are defined elsewhere," [3] they do not fit within *Mackall*'s definition of the elements of an offense, as they are neither within the "enacting clause" nor "so incorporated with the definition or description of the offense as to constitute a part thereof." *Id.* at 110–11, 387 A.2d at 768.

Petitioner synthesizes *Mackall* and the legislative history to argue that all three parts of Section 16–101(a) must be proved as part of the State's case. Since 1969, all statutory versions of this section have used the same three-part structure. *See* Chapter 159 of the Acts of 1969. Before that, the statute provided, in pertinent part, that "[n]o person except those hereinafter expressly exempted shall drive any motor vehicle upon a highway in this State unless such person has a valid license as an operator or chauffeur under the provisions of this article." Md.Code (1957, 1967 Repl.Vol.), Art. 66 ½, § 86(a). In 1969, the statute was revamped, and that version is substantially the same as the current statute. *See* Chapter 159 of the Acts of 1969.

Without explicitly saying so, Petitioner implies that this 1969 revision transformed the exemptions into a part of the offense that must be proved by the State. The title to Chapter 159 indicates that the Legislature did intend to "revamp and consolidate" the entire licensure law in Maryland. *See id.* Petitioner's implication that this "substantive revision" of the statute somehow transformed the exemptions into elements of the offense, however, is unpersuasive. Petitioner can cite no further legislative history supporting this interpretation, as the 1969 revision predates comprehensive legislative record-keeping.[4] Instead, Petitioner states that the

---

3. Section 16–102(a), for example, defines twelve classes of individuals to whom the licensing requirements do not apply. Excerpts from this section are presented below.

4. *See Conaway v. Deane*, 401 Md. 219, 247, 932 A.2d 571, 587 (2007) ("[L]egislative bill files were not retained systematically by the General Assembly's Standing Committees or the Department of Legislative Ref-

statute's "plain language ... compels the conclusion that to establish a violation, the State must prove" all three parts of the statute.

██ Although cited and discussed by both parties, the legislative history of Section 16–101 offers little help in interpreting the statute. Instead, we turn to one of our well-established canons of statutory interpretation: In every case, a statute must be given "a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense." *See Robinson v. Balt. Police Dep't*, 424 Md. 41, 51, 33 A.3d 972, 978 (2011); *State v. Johnson*, 415 Md. 413, 422, 2 A.3d 368, 373 (2010). This principle applies even when the statute is ambiguous, as we explained in *Allen v. State:*

> Legislative purpose is critical, that purpose must be discerned in light of context, and statutes are to be construed reasonably with reference to the purpose to be accomplished. The purpose, in short, determined in light of the statute's context, is the key. And that purpose becomes the context within which we apply the plain-meaning rule. Thus results that are unreasonable, illogical or inconsistent with common sense should be avoided with the real legislative intention prevailing over the intention indicated by the literal meaning. (Citations omitted.)

*Allen v. State*, 402 Md. 59, 75, 935 A.2d 421, 430 (2007).

The State argues that interpreting parts two and three as affirmative defenses comports with common sense. Petitioner responds that if we adopt the State's interpretation, consonant with our "common sense" jurisprudence, then the Legislature would never have to grapple with and solve the enforcement problem that its statute created, and thus we would "never know whether the Judiciary's solution is the one the Legislature would have adopted." Furthermore, Petitioner believes that the State's interpretation would

---

erence (now known as the Department of Legislative Services) until 1975.").

undermine the guidance that a case like *Mackall* could give legislative drafters, and it would send the message that the Legislature does not need to grapple with these policy questions in the first place because the Judiciary will do so if necessary to make a poorly drafted statute easier for the State to enforce.

This idea directly conflicts with our jurisprudence calling for us to interpret a statute in a common-sense, logical manner if its language is ambiguous or if the plain meaning of the statute does not lend itself to facile interpretation. *See, e.g., Briggs v. State,* 413 Md. 265, 275, 992 A.2d 433, 439 (2010) ("Where a statute is ambiguous, we also consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." (citations and quotation marks omitted)); *Ridge Heating, Air Conditioning & Plumbing, Inc. v. Brennen,* 366 Md. 336, 342, 783 A.2d 691, 694 (2001) ("[T]he court, in seeking to ascertain legislative intent, may consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." (citation omitted)).

In this case, requiring the State to prove all three parts of Section 16–101(a) would surely be illogical. Neither party disputes that the State must prove part (1), that the defendant does not hold a Maryland driver's license. *See* § 16–101(a)(1). Part (2) permits an individual to drive a motor vehicle in Maryland if "the individual is expressly exempt from the licensing requirements" of the statute. Section 16–101(a)(2). These exemptions are listed in Section 16–102(a), which says that the licensing requirements do not apply to:

(1) An officer or employee of the United States while driving on official business a motor vehicle other than a commercial motor vehicle owned or operated by the United States;

(2) Except for members elected from this State, a member of the United States Congress ...;

(3) An individual while driving any road machine, farm tractor, or farm equipment ...;

(4) An individual who, while driving a mobile crane on a highway to or from a construction site in this State, has with him a valid Class A, B, or C license ...;

(5) A nonresident student enrolled in an accredited school, college, or university of this State or of a bordering state or serving a medical internship in this State ...;

(6) A new resident of this State during the first 60 days of residency ...;

(7) A member of the armed forces of the United States or of the United States Public Health Service who is serving on active duty and any dependent of the member ...;

(8) For not more than 30 days after he returns to the United States, a member of the armed forces of the United States who is returning from active duty outside the United States and any dependent of the member ...;

(9) A nonresident of this State if:

(i) He has with him a license to drive issued to him by the state of his residence;

(ii) His license authorizes him to drive in that state vehicles of the class he is driving in this State; and

(iii) He is at least the same age as that required of a resident for the vehicle he is driving in this State;

(10) A nonresident of the United States if:

(i) The individual has a valid license to drive issued to the individual by the country of residence;

(ii) The individual's license authorizes him to drive in that country vehicles of the class he is driving in this State;

(iii) The individual is at least the same age as that required of a resident for the vehicle he is driving in this State; and

(iv) Except as provided for in Subtitle 8 of this title, the vehicle is not a commercial motor vehicle;

(11) A member of the Maryland National Guard or a National Guard military technician . . .; and

(12) A member or employee of a fire department, rescue squad, emergency medical services unit, or volunteer fire company while driving an emergency vehicle. . . .

Many of the exemptions in this section would be peculiarly within the knowledge of the defendant, and this Court has held that "when the facts are peculiarly within the knowledge of the defendant . . . the burden is on him to prove that he comes within one or more of the exceptions." *Spurrier v. State,* 229 Md. 110, 112, 182 A.2d 358, 359 (1962); *see also Gibraltar Constr. & Eng'g Inc. v. State Nat'l Bank,* 265 Md. 530, 535, 290 A.2d 789, 792 (1972) ("The facts in regard to the doing of intrastate business in Maryland are particularly within Gibraltar's knowledge and the burden of coming forward with evidence to indicate a change in this regard was upon it.").

Petitioner argues that this principle did not survive *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). In *Mullaney,* the State of Maine required a defendant charged with murder to prove that he acted in the heat of passion on sudden provocation in order to reduce a homicide charge to manslaughter. *See Mullaney,* 421 U.S. at 684–85, 95 S.Ct. at 1882–83. The Supreme Court held that this Maine law violated the due process requirement that the prosecution prove beyond a reasonable doubt every fact necessary to constitute the crime charged. *Id.* at 703–04, 95 S.Ct. at 1892. Petitioner argues that *Mullaney* means our rule in *Spurrier* no longer applies, for *Mullaney* said that "although intent is typically considered a fact peculiarly within the knowledge of the defendant, this does not, as the Court has long recognized, justify shifting the burden to him." *Id.* at 702, 95 S.Ct. at 1891. This is a misreading of *Mullaney.*

A more careful reading of *Mullaney* reveals that the Supreme Court carefully preserved the right of a state to require a defendant to put forth "some evidence" to indicate that "he acted in the heat of passion before requiring the prosecution

to negate this element by proving the absence of passion beyond a reasonable doubt." *Id.* at 702 n. 28, 95 S.Ct. at 1891 n. 28.[5] Here, Petitioner put forth absolutely nothing to suggest that he was licensed to drive in another state or that he fell within any of the other exemptions listed in Section 16–102(a).

It is also significant that *Mullaney* involved proof of intent in committing a homicide. In such a case, the facts involved in proving the defendant's intent are often the very circumstances of proof of the homicide. As the Supreme Court said, "in this case ... the State has affirmatively shifted the burden of proof to the defendant. The result in a case such as this one where the defendant is required to prove the **critical fact in dispute,** is to increase further the likelihood of an erroneous murder conviction." *Id.* at 701, 95 S.Ct. at 1890. Here, the exemptions from this licensure requirement are not the "critical fact[s] in dispute." There is nothing that remotely suggests they are in dispute at all.

The Court of Special Appeals has also adhered to keeping such a burden on the defendant. *See, e.g., Herd v. State,* 125 Md.App. 77, 102–03, 724 A.2d 693, 706 (1999). In *Herd,* the Court of Special Appeals went to some length to distinguish *Mullaney:*

> Maryland has traditionally placed upon a defendant, by the device of giving the State the benefit of a presumption to the contrary, the obligation to see that there is produced sufficient evidence to generate a jury question on such issues as intoxication, self-defense, and entrapment.

> We are persuaded that nothing in *Mullaney v. Wilbur* adversely affects in any way the status of presumptions in

---

**5.** The full footnote reads:

> Many States do require the defendant to show that there is "some evidence" indicating that he acted in the heat of passion before requiring the prosecution to negate this element by proving the absence of passion beyond a reasonable doubt. Nothing in this opinion is intended to affect that requirement. (Citations and quotation marks omitted.)

*Mullaney v. Wilbur,* 421 U.S. 684, 702 n. 28, 95 S.Ct. 1881, 1891 n. 28, 44 L.Ed.2d 508 (1975).

this limited function of requiring that there be produced sufficient evidence to generate a jury issue. The holding of *Mullaney v. Wilbur* was very careful to add a qualifying clause:

> We therefore hold that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case.

(Emphasis, citations, and quotation marks omitted.)

*Id.* at 102–03, 724 A.2d at 706; *see also* 5 Lynn McLain, *Maryland Evidence* § 300:1 (2d ed. 2001) ("The party who has peculiar knowledge of certain facts bears the burden of proving them."); *Sproates v. State*, 58 Md.App. 547, 568, 473 A.2d 1289, 1299 (1984) ("There is nothing inherently unconstitutional about requiring a defendant to come forward with information particularly within his knowledge to show that he comes within one or more of the statutory exceptions. In fact, it is to his advantage to produce such evidence.").

For these reasons, the exemptions in part (2) are affirmative defenses that must be raised by a defendant.[6]

### Conclusion

We hold that, consistent with *Mackall*, the logical interpretation of this statute is that Section 16–101(a)(1) defines the offense, and Sections 16–101(a)(2) and (a)(3) are not so incorporated into the offense as to constitute part of it. The exceptions outlined in the latter two parts are affirmative defenses that a defendant must raise. Petitioner failed to do

---

6. Furthermore, part (3) of Section 16–101(a) permits an individual to drive a motor vehicle in Maryland if "the individual otherwise is specifically authorized" by the statute to drive such a vehicle. Section 16–101(a)(3). As the Petitioner acknowledges, it is "unclear" what exactly this third part refers to. The State seizes upon this point, correctly flagging the illogical result that would ensue under Petitioner's interpretation, as Petitioner "cannot even specify what his own interpretation of the statute would require the State to prove[.]" As such, if a defendant is to avoid conviction under part (3), he must raise it as an affirmative defense.

so, and the State's evidence was sufficient to support his conviction.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**