*Delonte Teshawn Howard v. State of Maryland*
No. 0338, Sept. Term. 2023
Opinion by Leahy, J.

**Criminal Law > Evidence > Burden of Proof > Matters excepted in statute defining offense**

When a statutory exception is an essential ingredient of a crime because the "exception is descriptive of the offense or so incorporated" into the offense, the State bears the burden to "negate the exception[.]" *Mackall v. State*, 283 Md. 100, 110 (1978).

The exception for Colt AR-15 Sporter H-BAR rifles in Maryland Code (2003, 2022 Repl. Vol.), Public Safety Article ("PS"), section 5-101(r)(2)(xv), "is descriptive of the offense," *Mackall*, 283 Md. at 110, because it is incorporated within the same definition that brings all other "Colt AR-15, CAR-15, and all imitations" within the purview of the statute defining regulated firearms.

**Criminal Law > Evidence > Burden of Proof**

In order to sustain a conviction under PS § 5-133(c) and PS § 5-138, the State must establish that the regulated firearm did not fall within the statutory exception for a Colt AR-15 Sporter H-BAR, as specified in PS § 5-101(r)(2)(xv).

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 0338

September Term, 2023

_____

DELONTE TESHAWN HOWARD

v.

STATE OF MARYLAND

_____

Berger,
Leahy,
Getty, Joseph M.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Leahy, J.

_____

Filed: April 24, 2024

Mr. Jose Martinez-Cruz's rifle was stolen out of the back of his truck in the early evening of July 14, 2022, when he went into the Tres Amigos restaurant located in Rockville, Maryland, to pick up a sandwich. A jury in the Circuit Court for Montgomery County later convicted Mr. Delonte Teshawn Howard ("Appellant") of all five counts on which he was charged: Count I for possession of a regulated firearm after a prior conviction of a crime of violence; Count II for possession of a rifle after having been convicted of a crime of violence; Count III for theft of property valued between $100 and $1,500; Count IV for conspiracy to commit theft of property with a value between $100 and $1,500; and, Count V for possession of a stolen regulated firearm. The circuit court sentenced Appellant to a total eight-year term of imprisonment on all counts.

Appellant filed a timely appeal on April 21, 2023, and presents two questions for our review,[1] which we have rephrased, as follows:

I.      Is the evidence sufficient to sustain Appellant's convictions for possession of a regulated firearm and possession of a rifle under counts I, II and V?

---

[1] Appellant's questions presented are:

1. Is the evidence insufficient to sustain Mr. Howard's convictions for possession of a regulated firearm after having been convicted of a crime of violence (Count 1), possession of a rifle after having been convicted of a crime of violence (Count 2), and possession of a stolen regulated firearm (Count 5)?

2. With respect to Counts 1 and 5, did the trial court abuse its discretion by instructing the jury that a regulated firearm "means a Colt AR-15 or its copy, regardless of which company produced or manufactured it," without including the exception provided in the statutory definition?

II.     Did the trial court abuse its discretion when it denied Appellant's requested jury instruction that included the statutory exception of a regulated firearm?

For reasons that we shall discuss, we affirm in part, and reverse in part. We hold that the evidence was legally insufficient to sustain Appellant's convictions under Counts I and V. More specifically, we hold that the evidence presented was legally insufficient for the jury to find beyond a reasonable doubt that Appellant was in possession of a "regulated firearm" because the State failed to meet its burden to negate the "Colt AR-15 Sporter H-BAR rifle" exception in Maryland Code, (2003, 2022 Repl. Vol.), Public Safety Article ("PS"), Section 5-101(r)(2)(xv). Consequently, we reverse the judgments on Counts I and V.

We affirm Appellant's conviction for possession of a rifle after having been convicted of a crime of violence under Count II because we are precluded from considering the sufficiency of the evidence to support this charge where it was not challenged below in a motion for judgment of acquittal. Finally, because we reverse Appellant's convictions under Counts I and V for possession of a regulated firearm, we do not address Appellant's second question challenging the trial court's instruction to the jury on the statutory definition of a regulated firearm.

**BACKGROUND**

The following factual account is drawn from the evidence presented at Appellant's jury trial on March 20, 2023.

In the early evening on July 14, 2022, Mr. Jose Martinez-Cruz retrieved his gun from Atlantic Guns, Inc. after getting it serviced and cleaned and then placed his gun in a

2

cardboard box in the back seat of his truck. He drove about "five minutes away" to Tres Amigos restaurant, located within Lincoln Shopping Center in Rockville, to pick up a sandwich. He left his truck running and the doors unlocked, and before entering the restaurant, Mr. Martinez-Cruz stopped to chat for about ten minutes with a group of men congregated on the sidewalk, one of whom he identified as Appellant.[2] When he returned to his truck, Mr. Martinez-Cruz discovered his gun was missing. He immediately called 9-1-1 and reported the theft to the police, describing the stolen item as an "[A]R-15" or a ".223 rifle." The 9-1-1 audio recording was admitted into evidence at trial and played before the jury. On the recording, Mr. Martinez-Cruz can be heard telling the 9-1-1 dispatcher that "[s]omebody stolen my .223 rifle. I have in the back to my truck. I get some food, and somebody come and stole it." At trial he explained that his gun was a ".223[,]" which is "similar [to] the [A]R-15" but he did not know the name of the gun's manufacturing company. He stated that he owned the gun for "more than three years" and described it as "a long gun" held to the shoulder, distinguishing it from a handgun.

State's Exhibit 1, a photograph of an AR-15, was presented to Mr. Martinez-Cruz during his testimony to aid his recollection.[3] He identified the gun in the photograph as an

---

[2] Mr. Martinez-Cruz testified that he did not know the people he was talking with but indicated it was a cultural practice of being Latino to "always . . . say hello" even if "you never met before[.]"

[3] At no point during the trial did the State or any witnesses identify the specific type of gun depicted in State's Exhibit 1. The State did not establish that the firearm was a Del-Ton DTI AR-15 rifle (or its copies), as illustrated by the following colloquy between the
(Continued)

3

AR-15: "Yeah, that one is R-15.  Mine is the .223."  He pointed out that the gun in the photograph had "a new mirror [on] the top[,]" whereas his gun had a scope that he had just "bought . . . that day."  Additionally, he noted differences in the "front piece[,]" the barrel of the gun, describing "a little mark, like something in the top[,]" which distinguished his gun from the one in the photograph.  He also mentioned that the magazine in the photograph was aluminum, while his was "like [a] black magazine" made of plastic, and that his gun had "clips" and could be "pulled long."  Despite these discrepancies, Mr. Martinez-Cruz identified the stolen gun as a ".223" and testified that the AR-15 and .223 are "[t]he same, the same model" and "[t]he same bullet go[es] into" both an AR-15 and a .223.  He offered to show pictures of his gun, mentioning that he had some pictures on his phone, but the prosecutor suggested that Mr. Martinez-Cruz describe his gun instead.

---

Court and the Assistant State's Attorney following Appellant's motion for judgment of acquittal:

| THE COURT: | But nobody identified your picture as a Del-Ton AR-15. Correct? |
|---|---|
| [STATE'S ATTY]: | I'm sorry? |
| THE COURT: | No one identified what a Del-Ton AR-15 looks like. Did they? |
| [STATE'S ATTY]: | No, Your Honor.  They, they did not.  The only, the only testimony was as to an AR-15 style firearm.  And [Mr. Martinez-Cruz's] testimony was that his looks different than the one in the photo. |
| THE COURT: | But that photo really doesn't get us anywhere. |
| [STATE'S ATTY]: | It's a, a reference point as to generally speaking, what is an AR-15 style firearm. |

Sergeant Christopher Peck testified that he was the first to respond at the scene at approximately 6:45 p.m. and initiated a search for an AR-15 after speaking to Mr. Martinez-Cruz. Sgt. Peck described an AR-15 as a "general term used for a rifle that's based off of an ArmaLite 15 gun, so it's a gas-operated air-cooled magazine-fed rifle." He explained that the caliber of ammunition for an AR-15 is .223 and that many individuals "use the caliber that that rifle is chambered in to describe their rifle, instead of calling it an AR-15." He elaborated, stating:

> ArmaLite is the company that created or designed the weapon. . . . It was then sold to Colt. Colt then sold it to the military, and then it was introduced to civilians. So it's sort of, AR is the shortened term, AR-15 is the shortened term, but it's basically like going into a restaurant and instead of ordering a soda you ask for a Coke. It's just generally accepted that if you ask somebody for a Coke, you're asking for a soda. So if you say an AR, you're referring to that style of rifle.

Sgt. Peck testified that he reviewed security footage from a nearby store and contacted Atlantic Guns, which confirmed that Mr. Martinez-Cruz had his gun serviced and picked up that day. He also reviewed the repair tag from Atlantic Guns; however, Sgt. Peck did not testify whether the repair tag identified the model of the gun.[4]

The State called Detective Renae McEvoy as its next witness. Det. McEvoy testified that she obtained and reviewed several surveillance videos taken from neighboring businesses in the shopping center. These surveillance videos were entered into evidence and played for the jury. The footage depicted an individual retrieving "a black plastic bag" from Maria's Family Market and then immediately taking an item from Mr. Martinez-

---

[4] The repair tag was not entered into evidence.

5

Cruz's truck. The videos then showed two individuals leaving the shopping center and walking along a path that ended at an elementary school's multipurpose field. Det. McEvoy identified one of the individuals as Appellant and obtained a search warrant for Appellant's home, which was located about 500 feet away from the elementary school's field. Det. McEvoy testified that she was "looking for . . . clothing" and a "black Del-Ton DTI AR-15 rifle" as items of interest.[5] In executing the search warrant, Det. McEvoy recovered clothing that matched the attire worn by Appellant in the surveillance videos but did not recover the gun.

Next, the State called Detective Kelly Reidy of the Rockville City Police Department who testified that he interviewed Appellant on September 1, 2022. A portion of the recorded interview was entered into evidence and played for the jury. When Det. Reidy informed Appellant that his arrest was for possession of a rifle, Appellant asked, "How do I have possession of it?" Det. Reidy then explained that there was video evidence showing Appellant and another individual passing a bag "back-and-forth with the rifle in it" along a path, and that there was also footage of Appellant "running with the same bag." Det. Reidy informed Appellant that the police had a search warrant for his house to find

---

[5] Although the warrant itself was not entered into evidence, Det. McEvoy testified to what was written on the face of the warrant. Defense counsel objected to Det. McEvoy's testimony regarding the Del-Ton AR-15 style firearm, stating: "That's based on hearsay. I don't know how she knows that. She, she didn't see the rifle. She already -- just said she didn't -- sorry, she didn't find the rifle." Although Det. McEvoy did not explain why she was looking for the Del-Ton AR-15 style firearm, the court overruled the objection, stating that the issue of what Detective McEvoy was "looking for" and "[w]hether or not that's what was stolen" were "two different things."

evidence of the crime and that they were searching for clothing and a weapon. He directly asked Appellant, "Where's the rifle at?" Appellant responded, "Honestly, I don't even know that he know." Appellant declined to identify any person he was with and denied that he had a gun, stating "I don't got nothing to do with no guns[,]" and asserting that he "can't incriminate [himself] or nobody else."

At the close of the State's case, defense counsel moved for a judgment of acquittal as to all charges. Defense counsel argued that in order to convict Appellant on possession of a regulated firearm (Count I) and possession of a stolen regulated firearm (Count V), the State was required to prove beyond a reasonable doubt that the weapon did not fall within the statutory exception of a regulated firearm. Even when viewed in the light most favorable to the State, the defense argued, the evidence was insufficient to reasonably infer that the stolen firearm was a "regulated firearm." Defense counsel underscored that the sole evidence presented came from Mr. Martinez-Cruz, who specified that his gun was "not a handgun," was "long," had a different middle section, and that his gun had a different color magazine, compared to the AR-15 depicted in State's Exhibit 1. Counsel argued that there was "zero testimony" as to "what kind of barrel was on that gun," and noted that the "HBAR rifle is not a regulated firearm" and is an exception under PS § 5-101(r)(2)(xv). Therefore, counsel maintained, the evidence was insufficient to ascertain whether Mr. Martinez-Cruz possessed a regulated firearm that was stolen from him or a Colt AR-15 Sporter H-BAR rifle, which is expressly excepted from regulation under the firearm statute.

Furthermore, counsel argued, aside from Det. McEvoy's testimony that the Del-Ton AR-15 was the "gun she was looking for[,]" there was "[n]o other testimony . . . [that]

7

specified [the stolen gun] was a Del-Ton AR-15[.]" Defense counsel compared the case to *Mackall v. State*, 283 Md. 100 (1978), and stated that under *Mackall*, to "convict a person for carrying a deadly weapon . . . the State has to prove beyond a reasonable doubt . . . that the purported deadly weapon did not fall within" an enumerated exception to the statutory definition of a "dangerous and deadly weapon" under Section 36(a) of what was then Article 27 of the Maryland Code. Counsel asserted that the "same rationale" presented in *Mackall* should apply to this case.

The State responded that *Mackall* was inapposite because *Mackall* involved "an entirely different statute." The State argued that there was "no evidence" to support the claim that the firearm in question was a "Colt HBAR Sporter rifle[.]" Proving that the gun was not a Sporter H-BAR rifle would place the State "in the position of proving a negative as to an exception."[6]

The judge announced that he would "reserve" on the motion for judgment of acquittal. Subsequently, the defense rested its case without calling any witnesses and renewed the motion for judgment of acquittal. Again, the judge stated he would "reserve on final [motion for judgment of acquittal] at this time."

---

[6] During oral arguments on February 5, 2024, the State contended that proving the negative would place an unreasonable burden on the State. Appellant's attorney countered and offered suggestions for ways the State could have met its burden to prove that the gun in this case was not an excepted Sporter H-BAR rifle, such as entering the repair tag into evidence, entering receipts of the gun's purchase into evidence, calling a firearms expert in to testify, entering the photos of the gun from Mr. Martinez-Cruz's phone into evidence, and calling the repair technicians at Atlantic Guns in to testify.

*Jury Instructions*

Counsel for the defense and the State agreed that jury instruction 4:35.6, which referred to the regulated firearm charges, should include the statutory language. The Court agreed to use the language from the regulated firearms statute, replacing ".223 semiautomatic" with "Colt AR-15." However, the parties disagreed on whether to include the exception contained within the statute in the jury instruction concerning Counts I and V. Defense counsel "insist[ed] that the exception [to the definition of a regulated firearm] be included in [the] jury instruction." The defense argued that it was the State's burden "to prove that this was a regulated firearm beyond a reasonable doubt[,]" and that to do this the State was required to prove that the weapon was not a Colt AR-15 Sporter H-BAR rifle because such rifle was excepted under PS § 5-101(r)(2)(xv). The judge asked defense counsel, "[h]ow can you argue something that was not produced in evidence[?]" Defense counsel again insisted that it was the State's burden to prove that the weapon did not fall within the exception, and argued:

> I don't think this is like akin to, like an affirmative defense where I have to put on evidence . . . in order to make an argument [because the exception is] in the statute. It's in the precise section that the State wants to pull their definition of regulated firearm from.

The judge then addressed the matter, stating that "basically it comes down to whose burden it is to prove the exception, [Appellant's] or the State's." The judge ultimately concluded that he was "not going to have the jury speculating on a weapon that's not in

9

evidence" and declined to include the language that defense counsel requested in the jury instructions.[7]

---

[7] The judge gave the following jury instructions:

The defendant is charged with possessing a regulated firearm after having been convicted a crime that disqualified him from possessing a regulated firearm. In order to convict the defendant, the State must prove one, the defendant knowingly possessed a firearm, two, that the firearm was a regulated firearm. A regulated firearm means a Colt AR-15 or its copy, regardless of which company produced or manufactured it.

The State and defendant agree and stipulate the defendant was previously convicted of a crime, that disqualifies him from possessing a regulated firearm.

Next count, possession of a rifle with a prohibiting conviction. Defendant is charged with possessing a rifle after having been convicted of a crime that disqualified him from possessing a rifle. In order to convict the defendant, the State must prove: one, that the defendant knowingly possessed a rifle and two, the defendant was previously convicted of a crime that disqualified him of possessing a rifle.

A rifle means a weapon that is designed or redesigned, made or remade, and intended to be fired from the shoulder. And two, designed or redesigned, and made or remade, to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifle bore for each single pull of the trigger.

\* \* \*

The defendant is charged with the crime of possession of a stolen regulated firearm. In order to convict the defendant of this charge the State must prove the defendant possessed a stolen regulated firearm to wit a black Del-Ton AR-15 style firearm and two, that the defendant knew or had reasonable cause to believe that the regulated firearm, to wit a black Del-Ton AR-15 style firearm had been stolen.

10

*Ruling on Motion for Judgment of Acquittal and Sentencing*

The jury issued its verdict on March 20, 2023, and found Appellant guilty on all charges. A month later, the parties reconvened for sentencing and to hear the judge's ruling on Appellant's motions for judgment of acquittal.[8] The judge ultimately denied the motions for judgment on all counts, and then proceeded to sentence Appellant as follows:

> **Count I:** 15 years, with all but eight years suspended, five of which are mandatory;
> **Count II:** 15 years, to run concurrently, with all but 5 years suspended;
> **Count III:** Six months, concurrent with Count 1;
> **Count IV:** Six months, concurrent with Count 1; and
> **Count V:** Five years consecutive, with all suspended.

---

[8] The parties are in accord that the trial court did not have authority to reserve its ruling on the motions until after trial. As Appellant states, citing *State v. Sirbaugh*, 27 Md. App. 290, 294 (1975), "by reserving its ruling and submitting the case to the jury, the court effectively denied the motion during trial." We agree. *See Malarkey v. State*, 188 Md. App. 126, 160 (2009) ("By its terms, Md. Rule 4-324 does not authorize a court to reserve its ruling on a motion for judgment of acquittal, in contrast to the civil context." (citation omitted)). We note that in rendering his ruling on the motion beginning with Count II, possession of a rifle after having been convicted of a crime of violence, the trial judge stated:

> Count 2, with the rifle, I think the State just flat proved it. There's testimony that it was a rifle and testimony -- definition from, what is it, [Maryland Code (2002, 2021 Repl. Vol.), Criminal Law Article, §] 4-201, I believe, of rifle, and Mr. D'Elia just asked that flat-out question, and he got a yeah. I think that yeah response was firing from a shoulder. So that supplies his -- so deny the motion as to Count 2.

The judge also acknowledged the complexities of Count I and V, and observed that the statutory exception was a "bizarre exception for unknown reasons[.]" He stated that he "agree[ed] with [the Appellant] that, as indicted, . . . the State did not prove that [Appellant] stole a black Del-Ton AR15." Drawing, in part, on the Coke/Pepsi analogy, the judge concluded that the State was able to narrowly demonstrate that the weapon, while not conforming exactly to the weapon in the indictment, qualified as a copy of assault weapons like AR-15s and .223s.

## DISCUSSION

### I.

### Sufficiency of the Evidence

### A.  Standard of Review

Upon review of a criminal conviction for sufficiency of the evidence, we "consider the evidence adduced at trial sufficient if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt." *Beckwitt v. State*, 249 Md. App. 333, 351 (2021) (quoting *State v. Coleman*, 423 Md. 666, 672 (2011), with internal quotation marks omitted).  "Our review is made without deference to the legal reasoning of the trial judge, and instead, we will defer to the finder of fact and to 'any reasonable inferences a jury could have drawn in reaching its verdict.'" *Mohan v. State*, 257 Md. App. 65, 74 (2023) (quoting *Purnell v. State*, 250 Md. App. 703, 711 (2021)).  This  standard  applies whether the evidence was direct or circumstantial.  *See State v. Albrecht*, 336 Md. 475, 479 (1994).  Our decisional law instructs that circumstantial evidence may be sufficient to sustain a conviction, "but not if that evidence amounts only to strong suspicion or mere probability. Although circumstantial evidence alone is sufficient to sustain a conviction, the inferences made from circumstantial evidence must rest upon more than mere speculation or conjecture." *Corbin v. State*, 428 Md. 488, 514 (2012) (quotation omitted).

### B.  Appellant Waived His Sufficiency Challenge Under Count II

At the close of the State's arguments, Appellant moved for a motion for judgment of acquittal.  Addressing the charges under Count I—possession of a regulated firearm—

defense counsel argued that Mr. Martinez-Cruz was "the only one who ha[d] testified about . . . the specifics of the stolen rifle[.]" Counsel pointed out that, in his testimony, Mr. Martinez-Cruz described the gun as "an AR-15, specifically a [.]223 rifle" that looked "similar to the picture that the State's attorney showed him[.]" However, defense counsel asserted, the exception to the regulated firearm statute "specifies that an HBAR rifle is not a regulated firearm." Counsel highlighted that there was "zero testimony" about the barrel of the gun, which is the key distinction between a regulated AR-15 and an unregulated Colt AR-15 Sporter H-BAR. Citing to *Mackall v. State*, 283 Md. 100 (1978), defense counsel asserted that "the State ha[d] to prove beyond a reasonable doubt . . . that the purported deadly weapon did not fall within the exception[.]"

The court asked defense counsel if he "want[ed] to argue any other counts[,]" to which Appellant clarified that he would argue for judgment of acquittal "for the theft counts, Count 2, Count 3, and Count 4 – I'm sorry, **not Count 2**. Just Count 3 and Count 4 are the theft charges." (Emphasis added).

Appellant argued that the theft charges in "Count[s] 3 and 4" should be withdrawn because there was "[n]o other testimony" that the firearm "was a Del-Ton AR-15[,]" as specified in the criminal indictment. Appellant argued that the criminal indictment was "specific as to what weapon" the State alleged was "in that black bag. And there [was] . . . no testimony about really what kind of weapon was in that bag, except for that it's an AR style." Defense counsel did not offer any argument under Count II of the indictment, which alleged that Mr. Howard "did possess a rifle after having been convicted of a crime of violence, in violation of Section 5-206 of the Public Safety Article[.]" After

13

the defense rested its case, counsel renewed the motion for judgment of acquittal, incorporating all its previous arguments, and again argued that the statutory language included the "exception for the HBAR[.]"

Before this Court, Appellant argues that, although Mr. Cruz testified that his .223 was a "long gun," and in his 9-1-1 call referred to his gun as a ".223 rifle," the evidence that the State presented was insufficient to prove, beyond a reasonable doubt, that it met the statutory definition of a rifle under Maryland Code (2002, 2021 Repl. Vol.), Criminal Law Article ("CR"), § 4-201(e).[9] The State counters that Appellant did not raise this argument in his motion for judgment of acquittal prior to the case being submitted to the jury. "Instead, he raised the issue in a written motion after trial in response to the trial court indicating that it would 'reserve' its ruling on the motion. As [Appellant] acknowledges, however, the court 'did not have the authority to reserve its ruling on the motion[.]'"

We agree with the State. The record shows that Appellant failed to argue at all—and certainly not "with particularity" as required under Maryland Rule 4-324(a)—that the State did not sufficiently prove that the firearm in question met the statutory definition of a rifle. In *Starr v. State*, Judge Joseph F. Murphy explained, on behalf of a unanimous

---

[9] CR § 4-201(e) states:

> *Rifle*. – "Rifle" means a weapon that is:
> (1)  designed or redesigned, made or remade, and intended to be fired from the shoulder; and
> (2)  designed or redesigned, and made or remade to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger.

14

Supreme Court, why the defendant failed to preserve for review on direct appeal his argument that a sawed-off shotgun described by the State's witnesses was actually a handgun as defined by statute:

> It is well settled that "appellate review of the sufficiency of the evidence in a criminal case tried by a jury is predicated on the refusal of the trial court to grant a motion for judgment of acquittal." *Lotharp v. State*, 231 Md. 239, 240, 189 A.2d 652, 653 (1963). A criminal defendant who moves for judgment of acquittal is required by Md. Rule 4-324(a) to "state with particularity all reasons why the motion should be granted[,]" and is not entitled to appellate review of reasons stated for the first time on appeal.

*Starr v. State*, 405 Md. 293, 302-03 (2008) (alteration in original) (some internal citations omitted). Appellant in this case did not challenge the sufficiency of evidence regarding the firearm's classification as a rifle within CR § 4-201(e) until *after* the judge "reserved" on the motion and submitted the case to the jury, and the jury rendered its verdict.[10] We therefore determine that Appellant failed to preserve this argument. *Starr*, 405 Md. at 302-03. *See also Tarray v. State*, 410 Md. 594, 613 (2009) ("Tarray failed to preserve her argument as to the sufficiency of the evidence of deception by failing to object, with particularity, at the time of trial. Fundamentally, when moving for a judgment of acquittal at the close of the evidence offered by the State and, in a jury trial, at the close of all the evidence, the defendant must state with particularity all the reasons why the motion should be granted." (citations omitted)); *Wood v. State*, 209 Md. App. 246, 321 (2012) ("The issue of sufficiency of the evidence is not preserved when an appellant's motion for judgment of

---

[10] As noted above, we agree with the parties that when the trial judge reserved ruling on the motion for judgment and submitted the case to the jury, he effectively denied the motion. *Malarkey v. State*, 188 Md. App. 126, 161 (2009).

15

acquittal is on a ground different than that set forth on appeal.") (quoting *Tetso v. State*, 205 Md. App. 334, 383 (2012)).

### C. The State Bore the Burden to Negate the Statutory Exception to a "Regulated Firearm"

Under Count I, Appellant was charged with possession of a regulated firearm after having been convicted of a crime of violence in violation of PS § 5-133(c) ("Restrictions on possession of regulated firearms"); and under Count V, he was charged with possession of a regulated firearm, "to wit: a black Del-Ton AR-15 style firearm having reasonable cause to believe the same to have been stolen in violation of" PS § 5-135 ("Sale, transfer, or disposal of stolen regulated firearm prohibited"). During trial, both parties agreed that PS § 5-101(r)(2)(xv) contains the definition of "regulated firearm" that applies to the firearm at issue in this case.

### i. Parties' Contentions

Appellant asserts that his convictions under Counts I and V should be reversed because the State failed to prove beyond a reasonable doubt that he possessed a "[r]egulated firearm[,]" as that term is defined by PS § 5-101(r). He underscores that proof that the gun involved was a "[r]egulated firearm" is an essential element under both PS § 5-133(c) and PS § 5-135. According to Appellant, it was the State's burden to prove that the stolen firearm was not a "Colt AR-15 Sporter H-BAR[,]" which is expressly exempt from the reach of PS § 5-101(r)(2)(xv).

Drawing parallels to *Mackall v. State*, 283 Md. 100 (1978), Appellant emphasizes that it is the State's burden to negate an exception if it "is descriptive of the offense[s] or

16

so incorporated in the clause[es] creating [the offenses] as to make the exception a part of the offense[s.]" (Quoting *Mackall*, 283 Md. at 110 (alterations supplied by Appellant's brief)). Appellant observes that in *Mackall*, the Supreme Court of Maryland concluded that the State had the burden to prove that the weapon used in the assault was a "dangerous and deadly weapon" and did not fall within the statutory exception—a penknife without a switchblade—as defined in former Article 27, section 36(a), of the Maryland Code. Appellant highlights that in *Mackall*, the Court instructed that where "an exception is descriptive of the offense or so incorporated in the clause creating it as to make the exception a part of the offense, the State must negate the exception to prove its case." (Quoting *Mackall*, 283 Md. at 110 (bold emphasis supplied in Appellant's brief removed)).

Appellant urges that the statutes at issue in *Mackall* and in this case are "the same type of statutes" because the terms "dangerous weapons" and "regulated firearms" are "necessarily informed by the weapons enumerated in the subsections of the respective statutes." Just as the "penknife exception" was deemed an "essential ingredient" of the "dangerous weapon" statute, Appellant asserts that the "Colt AR-15 Sporter H-BAR rifle" exception in PS § 5-101(r)(2)(xv) is "an essential ingredient of the possession offenses underlying [Appellant's] convictions" under Count I (PS § 5-133(c)) and Count V (PS § 5-138). Thus, says Appellant, the State was required to prove that the exception did not apply.

From here, Appellant contends that the State failed to meet its burden that the Colt AR-15 Sporter H-BAR rifle exception did not apply, especially since the gun was never recovered. According to Appellant, the evidence presented established that Mr. Martinez-

17

Cruz's gun was a ".223-caliber gun that could be an AR-15–style rifle" but failed to establish that the gun was "one of the specifically prohibited firearms" under PS § 5-101(r)(2)(xv) because the evidence did not support "a reasonable inference that [the] gun was not the excepted firearm[.]"  Citing to *Brown v. State*, 182 Md. App. 138, 171-72 (2008), Appellant asserts that under the facts of this case caliber alone is insufficient to identify a gun as a regulated firearm.  In particular, Appellant maintains that for a weapon to qualify as an imitation or copy of a covered weapon under PS § 5-101(r)(2)(xv), the weapon must do more than *look* like the covered weapon; rather, according to Appellant the weapon must have "internal components and function, necessary to the operation of the firearm, [that] are similar to . . . one of the specifically enumerated assault weapons." (Quotation omitted).  Here, Appellant says that no such evidence was presented.

To the contrary, the State asserts that it was Appellant's burden to raise the statutory exception as an affirmative defense, and that because Appellant failed to do this, the State was not obligated to rebut the defense by proving that the gun was not a Colt AR-15 Sporter H-BAR rifle.  The State relies on *Brogden v. State*, 384 Md. 631, 643 (2005), in support of its argument that it was "exclusively within [Appellant's] discretion" to decide whether he would pursue such a defense, and therefore, it was "not the responsibility of the State to prove that the exception did not apply[.]"

The State distinguishes this case from *Mackall*, *supra*, emphasizing that, unlike *Mackall*, where there was no evidence as to the type of knife the defendant carried, here there was "ample testimony that [the] gun was an AR-15."  The State also claims that, unlike in *Mackall*, where the penknife exception of former Article 27 § 36(a) was "as

18

necessary to the description of the offense as [were] the weapons proscribed" (quoting *Mackall*, 283 Md. at 111), here, the exception to the definition of regulated firearm within PS § 5-101(r)(2)(xv) is "contained within a separate lengthy definition of 'regulated firearm'" rather than within more specific provisions of the code that criminalized Appellant's conduct. The State also mentions that, in contrast to *Brown v. State*, 182 Md. App. 138 (2008), the evidence presented to the jury in this case amounted to more than merely the caliber of bullet that the gun used.

Given that the State did not have the burden to prove the stolen weapon was *not* a Colt AR-15 Sporter H-BAR rifle, the State contends that there was sufficient evidence for the jury to find beyond a reasonable doubt that the stolen firearm was a regulated firearm under PS § 5-101(r)(2)(xv). The State points to the testimony of Mr. Martinez-Cruz, who stated the stolen gun was a ".223" and a "long gun." While he acknowledged some cosmetic differences between his firearm and the AR-15 depicted in State's Exhibit 1, he confirmed that his gun "was not a handgun" and that his .223 was a "type of AR-15" that used the same ammunition.

Responding to Appellant's claim that State's Exhibit 1 did not clearly show a Del-Ton AR-15, the State claims that a Del-Ton logo was visible above the magazine of the depicted weapon, allowing a reasonable inference that the weapon was similar to Mr. Martinez-Cruz's gun. The State concedes that Mr. Martinez-Cruz could not recall the "gun's brand name" but argues that "[a] reasonable inference from the evidence" can be drawn from the "specific description of the gun based on the repair tag and [Sgt. Peck's] call with the repair shop[.]"

The State strongly refutes Appellant's contention that it was required to offer testimony on the "internal components and functionality" of the gun. According to the State, this phrase has its origins in a 2010 opinion of the Maryland Attorney General which explained that, because some of the prohibited firearms listed PS § 5-101(r) are listed by caliber, a firearm will not constitute a prohibited *copy* of the statutorily specified firearm merely because the purported copy bears a cosmetic resemblance to the prohibited weapon.[11] 95 Op. Att'y Gen. 101, 108 (2010). For example, the State notes that under PS § 5-101(r)(2)(xviii), a "Famas semi-auto (.223 caliber)" is deemed to be a regulated firearm; because the statute lists a specific caliber, the State explains that, for a firearm to be considered a copy of this firearm, the copy must also utilize .223 caliber ammunition— other cosmetic similarities would not, alone, be sufficient.

The State concludes that a Colt AR-15 Sporter H-BAR rifle is "heavy-barreled," "typically quite expensive," and "used extensively in competitions[.]" (Citations omitted). Because Appellant did not introduce evidence indicating that the gun was "heavy-barreled[,]" the State maintains that "the jury was not required to 'speculate' on the type of gun at issue[.]" Accordingly, the State argues it met its burden to demonstrate the gun was a type of AR-15 under PS § 5-101(r)(2)(xv).

---

[11] During oral arguments on February 5, 2024, Appellant's counsel agreed that the AR-15, CAR-15, and the excepted Colt AR-15 Sporter H-BAR rifles all can utilize .223 caliber ammunition. Oral Arguments, Feb. 5, 2024, timestamp at 5:28 – 5:53, available at https://www.mdcourts.gov/sites/default/files/import/cosappeals/media/20240205_0338.mp4.

## ii. Legal Framework

It is axiomatic that the State must prove each element of a crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). Thus, in cases involving the use of a statutorily defined weapon, the State is obligated to prove, beyond a reasonable doubt, that the weapon meets the statutory definition. *Wilder v. State*, 191 Md. App. 319, 337-38 (2010). *See also Brown v. State*, 182 Md. App. 138, 166 (2008) ("[E]vidence to support a conviction for a handgun crime is insufficient unless a jury can find beyond a reasonable doubt that the weapon used met the statutory definition of 'handgun.'" (citations omitted)).

We agree with the parties that the following definition of "regulated firearm" in PS § 5-101(r)(2)(xv) is controlling:

> (r) "Regulated firearm means:
>
> * * *
>
> (2) a firearm that is any of the following specific assault weapons or their copies, regardless of which company produced and manufactured that assault weapon:
>
> * * *
>
> (xv) Colt AR-15, CAR-15, and all imitations **except** Colt AR-15 Sporter H-BAR rifle[.]"

PS § 5-101(r)(2)(xv) (emphasis added).

The Colt AR-15 Sporter H-BAR exception was first introduced in Maryland with passage of the Maryland Gun Violence Act of 1996. 1996 Md. Laws, ch. 562 (HB 297). The new law substantially modified former Article 27 § 441 by, among other things, including new definitions of "firearm" and "regulated firearm." The Senate Judicial

21

Proceedings Committee described the changes to the definition of "regulated firearm" as follows:

> This is a new term that includes; (1) handguns; (2) assault weapons; and (3) any firearm whose sale or transfer is subject to the provisions of the new subtitle governing the sale and repair of regulated firearms. Current law regulates the sale and repair of "pistols and revolvers" and "assault weapons." In this bill, pistols and revolvers are called "handguns." The catchall language of item (3) goes beyond current law because there are no other types of firearms, besides handguns and assault weapons, that are governed by current law regarding the sale and repair of firearms.

Senate Jud. Procs. Comm., Senate Bill 215, Bill Analysis, at 4 (1996), *in* 1996 SB 215 Bill File. In 2003, the Maryland General Assembly repealed Article 27 § 441 and recodified it, without substantive change, in the Public Safety Article at Section 5-101. 2003 Md. Laws, ch. 5 (SB 1) (codified as Md. Code Ann., Pub. Safety § 5-101 (2003)). The Colt AR-15 Sporter H-BAR exception traveled with the recodification of the statute where it remains today.

We glean little from the statutory and legislative history about the Colt AR-15 Sporter H-BAR exception specifically; however, it appears that the assault weapon definitions and exclusions incorporated in the Maryland Gun Violence Act of 1996 were intended to be consistent with the Federal Public Safety and Recreational Firearms Use Protection Act of 1994 (referred to as the "Federal Assault Weapons Ban," or "AWB"). Public Safety and Recreational Firearms Use Protection Act, H.R. 4296, 103d Cong. (1994) (as passed by the House, May 5, 1994).[12] The Senate Judicial Proceedings Committee

---

[12] The AWB carried a sunset provision and expired on September 13, 2004. Public Safety and Recreational Firearms Use Protection Act, H.R. 4296, 103d Cong. (1994)

(Continued)

Floor Report stated that the definition for "firearm" was "consistent with federal law." Floor Report, Senate Bill 215, Maryland Gun Violence Act of 1996, Senate Judicial Proceedings Committee, 1996 Leg., 410 Sess. (Md. 1996) at 6 ("SB 215 Floor Report"). Indeed, Maryland's Governor's Commission on Gun Violence noted in its recommendations that "[t]he United States Congress has determined that assault weapons and high capacity gun magazines are a threat to public safety, and therefore their sale should be banned in the State of Maryland. The Commission's intent is to track federal law and provide the same exemptions for Maryland Law Enforcement Officers." Governor's Commission on Gun Violence, Comprehensive Reform for a Safer Maryland at 20 (Nov. 1, 1995). This Court previously noted that the General Assembly's efforts toward "consistency with federal law is evident in much of the history of the Maryland Gun Violence Act of 1996." *Walker v. State*, 192 Md. App. 678, 690 (2010) (citation omitted).

The AWB banned nineteen assault weapons by name and exempted 650 firearm models as not banned. H.R. 4296, 103d Cong. (1994). In addition to the firearms listed, a weapon would also be banned if it had at least two of the following military-like characteristics:

(i)     a folding or telescoping stock;
(ii)    a pistol grip that protrudes conspicuously beneath the action of the weapon;
(iii)   a bayonet mount;
(iv)    a flash suppressor or threaded barrel designed to accommodate a flash suppressor; and

---

(stating in section 6 that the Act and the amendments made by this Act "are repealed effective as of the date that is 10 years after [the enactment] date").

23

(v)     a grenade launcher[.]

H.R. 4296, 103d Cong. (1994).   In response to the Federal AWB, Colt's Manufacturing

Company, Inc., modified its AR-15 and designated it as a "Colt Sporter Match

HBAR." Stephen P. Halbrook, FIREARMS LAW DESKBOOK § 10:6 (2023).  The Colt

Sporter Match HBAR resembled the AR-15, but was not considered by the ATF to be an

AR-15 or "a copy or duplicate of that rifle." *Id.*  Unlike the Federal AWB, which included

the two-feature test set out above, Maryland's 1996 Gun Violence Act removed the

"features test" and instead enumerated forty-five assault weapons, and their imitations and

copies, as prohibited assault weapons, along with specified exceptions.[13]  Important here,

---

[13] It has been observed that "the General Assembly did not define 'H-BAR rifle' in the statute, . . . [and] what constitutes H-BAR often turns on 'the manufacturer's designation of a firearm as an H-BAR or heavy-barreled version of an AR-15[.]'" Robert J. Taylor, Comment, *To Ban or Not to Ban: The Impact of Exceptions in Maryland Firearms' Regulations on Legislative Intent*, 53 U. BALT. L. F. 143, 148 (2023) (second alteration in original) (quoting STEPHEN P. HALBROOK, FIREARMS LAW DESKBOOK § 10:12 (2020)).  *Accord Kolbe v. O'Malley*, 42 F. Supp. 3d 768, 802 n.42 (D. Md. 2014).  We take judicial notice that the Maryland State Police has applied the PS § 5-101(r)(2)(xv) exemption to "heavy barrel" copies of the Colt AR-15 rifle made by manufacturers other than Colt.  *See Maryland State Police Firearms Search*, MARYLAND STATE POLICE, https://mdsp.maryland.gov/Organization/Pages/CriminalInvestigationBureau/LicensingDivision/Firearms/FirearmSearch.aspx, *archived at* https://perma.cc/U2XY-7XK8, *and* https://perma.cc/W9KB-9S2F (last visited Apr. 16, 2024).

In the case presently before this Court, no evidence was presented at trial to establish whether the stolen rifle was a heavy barrel AR-15 or what company manufactured it.  Appellant's convictions, therefore, must be reversed regardless of whether the PS § 5-101(r)(2)(xv) exemption applies to heavy barrel AR-15 rifles not manufactured by Colt.  The parties did not present argument or briefing concerning why the exemption should be expanded beyond "Colt AR-15 Sporter H-BAR rifle[s]" under the plain language of the statute and the overall legislative intent of the Maryland Gun Violence Act of 1996 to "reduc[e] gun-related violent crime in Maryland[.]"  SB 215 Floor Report, at 1.  We note that the General Assembly used the words "copies" and "imitations" when describing the

(Continued)

a Colt AR-15 Sporter rifle with a heavy-barrel (H-BAR) is expressly placed outside of Maryland's regulated firearm statute. PS § 5-101(r)(2)(xv).

For instruction on which party had the burden of proving that the rifle was not an excepted H-BAR rifle, we turn to *Mackall v. State*. The Supreme Court of Maryland, in *Mackall v. State*, established a "test for whether a statutory exception to a crime is an essential element of the offense that the State must negate or an affirmative defense that a defendant must raise[.]" *Smith v. State*, 425 Md. 292, 296 (2012) (construing *Mackall v. State*, 283 Md. 100, 110-11 (1978)). Kenneth Mackall was convicted of, among other things, "unlawfully wear[ing] and carry[ing] . . . a certain dangerous and deadly weapon, to wit: a knife . . . with intent and purpose of injuring another person in an unlawful manner" under Count IV of the indictment. *Mackall*, 283 Md. at 102. The issue before the Court was whether Mackall "had the burden of proving that the knife he carried was not a penknife, where, by virtue of the definitional clause of the statute, it is not a crime to carry a penknife[.]" *Id.* Pertinently, the evidence presented at trial "did not show what kind of knife" Mackall had possessed. *Id.* at 108 n.8. While "various witnesses . . . testified that a knife was used," there was "no description of it whatsoever" and the "knife was not offered in evidence, apparently because it was not recovered by the police." *Id.*

---

prohibition but not when describing the exemption. Still, we leave this question for a case in which the issue is squarely presented.

As then provided by Maryland Code (1957, 1976 Repl. Vol., 1977 Cum. Supp.) Art. 27, § 36(a)(2),[14] the phrase "dangerous or deadly weapon[]" was defined to include an enumerated list of knives and other weapons. However, subsection (a) of that statute expressly provided that every person who shall wear or carry certain designated weapons, "'or any other dangerous or deadly weapon of any kind, whatsoever (*penknives without switchblade* and handguns, *excepted*),' either 'concealed upon or about his person' or 'openly with the intent or purpose of injuring any person in any unlawful manner,' shall be guilty of a misdemeanor." *Mackall*, 283 Md. at 104 (emphasis added) (quoting former Art. 27 § 36(a)). The Court explained that:

> when a penal act contains an exception so incorporated with the substance of the clause defining the offense as to constitute a material part of the description of the acts, omission or other ingredients which constitute the offense, the burden is on the State to prove beyond a reasonable doubt, that the offense charged is not within the exception. In other words, **when an exception is descriptive of the offense <u>or</u> so incorporated in the clause creating it as to make the exception a part of the offense, the State must negate the exception to prove its case.** But, when an exception is not descriptive of the offense or so incorporated in the clause creating it as to make the exception a part of the offense, the exception must be interposed by the accused as an affirmative defense. *Howes* [*v. State*, 141 Md. 532,] 535-48 [(1922)]. Of course, the burden of proving the corpus delicti and criminal agency is always on the State, and once the exception is interposed by the defendant, the burden remains on the State to show that it is not applicable.

*Mackall*, 283 Md. at 110-11 (emphasis added).

Applying this standard to Section 36(a) of former Article 27, the Court held that:

_____

[14] The provisions of former Article 27 at issue in *Mackall* have been superseded by what is now CR § 4-101.

[I]t is manifest that the weapons exception in subsection (a), set out in the enacting clause defining the offense, is an essential ingredient of the offense. The offense defined is committed only if certain weapons are carried. What those weapons are can be determined only in terms of those which are proscribed and those which are excepted. The weapons excepted are as necessary to the description of the offense as are the weapons proscribed. Inasmuch as it is incumbent upon the State to prove, beyond a reasonable doubt, that the weapon carried was one within the ambit of the statute, it must show that the weapon was one of those which the statute expressly specifies shall not be carried, or that it was any other dangerous or deadly weapon other than a penknife without switchblade [or other exempted weapon].

*Id.* at 111. The Court distinguished between dangerous and deadly weapons *per se* and weapons that, "though dangerous and deadly[,] . . . are not within the ambit of the statute[.]" *Id.* at 106. If the knife was a "dirk knife" or "a bowie knife," then the State would not have had to disprove the exception for penknives. *Id.* at 111. However, "although the evidence was sufficient to show that the knife was a dangerous and deadly weapon by the use to which it was put, the State had the further burden of showing that it was not a penknife without switchblade in order to prove the corpus delicti of the crime charged." *Id.* (citation omitted). The Court then determined that the State failed to meet its burden to prove that the knife "was not a penknife without switchblade" and "[n]ot having done so, the evidence adduced was not legally sufficient to sustain the conviction, and the judgment must be reversed." *Id.* (footnote omitted).

The *Mackall* Court, to a large degree, distinguished the facts of the case from *Spurrier v. State*, 229 Md. 110 (1962) (per curiam), which addressed the same subsection

27

of the same statute but reached the opposite result.[15]  In *Spurrier*, the defendant was convicted of carrying a concealed weapon and contended that the indictment was defective because the State was required to prove that the defendant was not within the class of people excepted from the statute, such as officers of the State or "any conservator of the peace" who is entitled to carry such a weapon.  *Spurrier*, 229 Md. at 111 & n.1.  The Supreme Court held that "when the facts are peculiarly within the knowledge of the defendant . . . the burden is on him to prove that he comes within one or more of the exceptions."  *Id.* at 112 (citations omitted).  Furthermore, the Court determined that the exception in subsection (c) of former Article 27 § 36 was not "a constituent element of the offense charged in the indictment[.]"  *Id.* at 111.  The *Mackall* Court distinguished the case before it from *Spurrier*, noting that the exceptions listed in subsection (c) were contained in "a subsection subsequent to the enacting clause of the offense" and were "not . . . so incorporated with the definition or description of the offense as to constitute a part thereof."  *Mackall*, 283 Md. at 111.[16]

_____

[15] The *Mackall* Court explained that *Spurrier* "concerned the provisions of subsection (b) [of former Article 27, § 36], now subsection (c) and hereinafter referred to as subsection (c)[.]"  *Mackall*, 283 Md. at 109; *see also id.* at 105 n.5 (explaining that the language formerly codified at Article 27, § 36(b) was moved to subsection (c) following "the addition of 'nunchaku' by Acts 1974, ch. 718, and the definition of that term as subsection (b)[.]" (citations omitted)).

[16] The *Mackall* Court noted that Section 36(a) of former Article 27, as applied in certain counties, made it "unlawful and a misdemeanor, punishable as above set forth, for any person under eighteen years of age to carry any dangerous or deadly weapon, other than a handgun, between one hour after sunset and one hour before sunrise, whether concealed or not, **except while on a bona fide hunting trip, or except while engaged in or on the way to or returning from a bona fide trap shoot, sport shooting event, or**

(Continued)

28

Nearly twenty-five years later, in *Smith v. State*, 425 Md. 292 (2012), the Supreme

Court of Maryland again addressed whether the State had the burden to negate a statutory

exception, or whether the exception constituted an affirmative defense. In that case, the

petitioner was found guilty of driving without a license under Maryland Code (1977, 2008

Repl. Vol.), Transportation Article ("Transp."), Sec. 16-101(a), which provided that:

> *In general.*— An individual may not drive or attempt to drive a motor vehicle
> on any highway in this State unless:
>   (1) The individual holds a driver's license issued under this title;
>   (2) The individual is expressly exempt from the licensing
>   requirements of this title; or
>   (3) The individual otherwise is specifically authorized by this title to
>   drive vehicles of the class that the individual is driving or attempting
>   to drive.

*Smith*, 425 Md. at 293-94 (quoting Transp. § 16-101(a)). As noted by the Court, the

circumstances in which the statute would deem an individual to be "expressly exempt"

from the statute's licensure requirements under Transp. § 16-101(a)(2), were enumerated

by Transp. § 16-102(a).[17] *Id.* at 300.

---

**any organized civic or military activity**." *Mackall*, 283 Md. at 105-06 (bold emphasis
added).

   [17] Section 16-102(a) of the Transportation Article provided, at that time, for twelve
separate categories of individuals who were exempt from the licensing requirements of
Title 16, including, by way of example:

   (1) An officer or employee of the United States while driving on official
   business a motor vehicle other than a commercial motor vehicle owned
   or operated by the United States;
   (2) Except for members elected from this State, a member of the United
   States Congress . . .;
   (3) An individual while driving any road machine, farm tractor, or farm
   equipment . . .;

(Continued)

According to the petitioner, even if it were shown that he did not hold a driver's license under Transp. § 16-101(a)(1), to be convicted of driving without a license the State was required to *also* demonstrate that the exceptions provided by subsections (a)(2) and (a)(3) did not apply. *See id.* at 295-96. The State, by contrast, maintained that the exceptions provided by Transp. § 16-101(a)(2)-(3) constituted "affirmative defenses" that "must be raised by a defendant[.]" *Id.* at 296.

In its discussion, the Supreme Court of Maryland recalled "jurisprudence calling for us to interpret a statute in a common-sense, logical manner if its language is ambiguous or if the plain meaning of the statute does not lend itself to facile interpretation." *Id.* at 300 (citations omitted). *See also id.* ("[T]he court, in seeking to ascertain legislative intent, may consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." (alteration in original) (quoting *Ridge Heating, Air Conditioning & Plumbing, Inc. v. Brennen*, 366 Md. 336, 342 (2011))). With these

---

(4) An individual who, while driving a mobile crane on a highway to or from a construction site in this State, has with him a valid Class A, B, or C license . . .;
(5) A nonresident student enrolled in an accredited school, college, or university of this State or of a bordering state or serving a medical internship in this State . . .;
(6) A new resident of this State during the first 60 days of residency . . .;
(7) A member of the armed forces of the United States or of the United States Public Health Service who is serving on active duty and any dependent of the member[.]

*Smith*, 425 Md. at 300-01 (quoting Transp. § 16-102(a)(1)-(7)). In *Smith*, the Supreme Court of Maryland determined that many of these exemptions would "peculiarly [be] within the knowledge of the defendant[.]" *Id.* at 302 (citing *Spurrier v. State*, 229 Md. 110, 112 (1962)).

30

principles in mind, the Court held that "the logical interpretation of th[e] statute is that [Transp.] Section 16-101(a)(1) defines the offense, and Sections 16-101(a)(2) and (a)(3) are not so incorporated into the offense as to constitute part of it[,]" and, therefore, "[t]he exceptions outlined in the latter two parts are affirmative defenses that a defendant must raise."[18] *Smith*, 425 Md. at 304. The Court reasoned that "requiring the State to prove all three parts of [Transp.] Section 16-101(a) would surely be illogical." *Id.* at 300. Many of the exemptions in the statute would be "peculiarly within the knowledge of the defendant[,]" and the Supreme Court of Maryland had previously held that when this is so, the burden is on the defendant to prove that he "comes within one or more of the exceptions." *Smith*, 425 Md. at 302 (quoting *Spurrier*, 229 Md. at 112). The *Smith* Court also reasoned that, unlike in *Mackall*, subsections (a)(2) and (a)(3) of Transp. § 16-101(a) were not "so incorporated into the offense [defined by subsection (a)(1)] as to constitute part of it" and the exceptions from the licensing requirement were not the "'critical fact[s]

---

[18] Other courts have similarly found that, as a "general guide to the interpretation of criminal statutes[,]" when an exception is incorporated in the language of the enacting clause of a criminal statute, it is the State's burden to negate the exception. *United States v. Vuitch*, 402 U.S. 62, 70 (1971); *see also, e.g.*, *State v. Brechon*, 352 N.W.2d 745, 749 (Minn. 1984) ("The test for determining what constitutes a basic element of rather than an exception to a statute has been stated as whether the exception is so incorporated with the clause defining the offense that it becomes in fact a part of the description." (quotation omitted)); *Reed v. United States*, 210 A.2d 845, 846 (D.C. 1965) ("When an exception to a statutory crime is *not* so incorporated in its enacting clause, the burden of showing that the exception applies is upon the one asserting its applicability." (emphasis added) (footnote omitted)); *United States v. Waters*, 73 F. Supp. 72, 73 (D.D.C. 1947) ("Where a statute defining an offense contains an exception which is so incorporated with the language defining the offense that the ingredients of the offense cannot be accurately described if the exception is omitted, the indictment must allege facts showing that accused is not within exception." (citation omitted)).

31

in dispute.'" *Id.* at 303-04 (alteration in original) (quoting *Mullaney v. Wilbur*, 421 U.S. 684, 701 (1975)).

## D. Analysis

### The Evidence was Insufficient to Establish that the Stolen AR-15 Rifle met the Statutory Definition of a "Regulated Firearm"

The parties do not dispute that the State was required to prove that Appellant was in possession of a "regulated firearm" as defined in PS § 5-101(r)(2)(xv);[19] however, they disagree on whether it was the State's burden to prove that the firearm did not qualify under the exception contained within the definition. Adhering to the test established in *Mackall*, we hold that, under a plain reading of the statutes and the overall statutory scheme under review, the "Colt AR-15 Sporter H-BAR rifle" exception in PS § 5-101(r)(2)(xv) is an essential ingredient of the possession offenses underlying Appellant's convictions under PS § 5-133(c) and PS § 5-138 because the exception is "descriptive of the offense or so incorporated in the clause creating it as to make the exception a part of the offense[.]" *Mackall*, 283 Md. at 110. Accordingly, we further hold that the State bore the burden to "negate the exception to prove its case." *Id.*

Once again, PS § 5-101(r)(2)(xv), provides that:

(r) "Regulated firearm" means:
    (1) a handgun; or
    (2) a firearm that is any of the following specific assault weapons or their copies, regardless of which company produced and manufactured that assault weapon:

---

[19] The parties stipulated that Appellant was a disqualified person for possessing a regulated firearm; therefore, it was not necessary for the State to prove that Appellant was part of the class of excepted people.

> (xv) Colt AR-15, CAR-15, and all imitations **except Colt AR-15 Sporter H-BAR rifle**[.]

(Emphasis added). Clearly, the exception for Colt AR-15 Sporter H-Bar rifles "is descriptive of the offense[,]" *Mackall*, 283 Md. at 110, because it is incorporated within the same definition that brings all other "Colt AR-15, CAR-15, and all imitations" within the purview of the statute. PS § 5-101(r)(2)(xv). And, applying *Smith*'s instructions on statutory interpretation, we conclude that requiring Appellant to prove that the firearm falls within the Colt AR-15 Sporter H-BAR exception, as the State suggests, would be illogical. In this case, in which no firearm was introduced into evidence, Appellant maintained his innocence, denying any involvement in the possession or theft of the firearm, and asserted that he had *no* knowledge of the firearm in question. It would be illogical and contrary to firmly established principles of criminal law to require Appellant to establish that the firearm—of which he claims he has no knowledge—was a Colt AR-15 Sporter H-BAR rifle.

This Court has previously acknowledged that "evidence to support a conviction for a handgun crime is insufficient unless a jury can find beyond a reasonable doubt that the weapon used met the statutory definition of a 'handgun.'" *Brown v. State*, 182 Md. App. 138, 166 (2008) (citations omitted). Indeed, challenges regarding "whether a weapon meets the statutory definition of a handgun most frequently arise[] in cases in which the weapon in question is not recovered and thus not produced at trial." *Id.* We have underscored that "tangible evidence in the form of the weapon is not necessary[, however,]

to sustain a conviction; the weapon's identity as a handgun can be established by testimony or by inference." *Id.* (citations omitted).

In this case, viewing the evidence in the light most favorable to the State, the State presented sufficient evidence indicating that the gun was an AR-15 or its imitation, as outlined under PS § 5-101(r)(2)(xv). Nonetheless, the State bore the additional burden of proving that the firearm in question was not a Colt AR-15 Sporter H-BAR rifle. Because the State did not even try to meet this burden, we conclude that the State adduced insufficient evidence, at trial, to prove the firearm in question was a regulated firearm under PS § 5-101(r)(2)(xv). We recognize that PS § 5-101(r)(2)(xv) exempts the Colt AR-15 Sporter H-BAR rifle as a regulated firearm, "despite identical functionality to its banned counterparts[,]" Robert J. Taylor, Comment, *To Ban or Not to Ban: The Impact of Exceptions in Maryland Firearms' Regulations on Legislative Intent*, 53 U. BALT. L. F. 143, 148 (2023) (emphasis removed), and that this may create a challenge for prosecutors who must prove the exception specified in PS § 5-101(r)(2)(xv) in criminal cases. But it is for the Maryland General Assembly to decide whether the exception for the Colt AR-15 Sporter H-BAR rifles still comports with the overall legislative intent of the Maryland Gun Violence Act of 1996—namely, to "reduc[e] gun-related violent crime in Maryland[.]" SB 215 Floor Report, at 1. *See Lawrence v. State*, 475 Md. 384, 421-22 (2021) ("While we do not see fit to invalidate CR § 4-203(a)(1)(i) on constitutional grounds, the correct course of action in instances such as these is to signal to the General Assembly that, in light of these policy concerns, . . . legislation ought to be considered to address the scope [of] CR §

4-203(a)(1)(i) given its classification as a strict liability offense." (internal quotation and citation omitted)).

In sum, because the evidence was legally insufficient to permit a jury to find beyond a reasonable doubt that Appellant stole or possessed a "regulated firearm," we must reverse Appellant's convictions under Count I (possession of a regulated firearm after having been convicted of a crime of violence) and Count V (possession of a stolen regulated firearm). We affirm all other judgments which remain in full effect, and we remand the case to the circuit court for resentencing.

**JUDGMENTS OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED IN PART AND AFFIRMED IN PART. SENTENCE BY THE CIRCUIT COURT FOR MONTGOMERY COUNTY UNDER COUNT 1 FOR POSSESSION OF A REGULATED FIREARM AFTER HAVING BEEN CONVICTED OF A CRIME OF VIOLENCE AND COUNT 5 FOR POSSESSION OF A STOLEN REGULATED FIREARM VACATED. ALL OTHER JUDGMENTS OTHERWISE AFFIRMED. CASE REMANDED FOR RESENTENCING CONSISTENT WITH THIS OPINION; COSTS TO BE DIVIDED EQUALLY.**